IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT E. FOSTER**,                      Case Number 1:12 CV 461

    Petitioner,                              Judge Benita Y. Pearson

    v.                                       REPORT AND RECOMMENDATION

**BARRY GOODRICH, Warden**

    Respondent.                           Magistrate Judge James R. Knepp II

## INTRODUCTION

This is an action initiated by *pro se* Petitioner Robert E. Foster, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Barry Goodrich filed a Return of Writ (Doc. 7) with attached exhibits (Doc. 7-1). Petitioner failed to respond to the Return of Writ. The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 4). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed with prejudice.

## FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial record. *Mitzel*, 267 F.3d at 530. Here, Petitioner does not dispute the facts. The Cuyahoga County Court of Appeals, Eighth District of Ohio, set forth the following

findings of fact:

>[P3] The victim, Anne Blanchard, testified to the events that occurred on October 28, 2008. Ms. Blanchard said that she worked downtown until about 7 p.m. She then left work to go meet some friends for a drink at the Winking Lizard Tavern on Prospect Avenue. She parked her car in a parking lot off Prospect and started walking toward the Winking Lizard. She saw a man standing nearby. She began to walk faster. She noticed the man was approaching her quickly, and she started to run. The man pushed her from behind. She hit the wall of a building and fell to the ground, striking her head and her knee. She looked up at the man, who was hovering over her. She threw her purse at him. The man grabbed her purse and ran down the street toward East 9th Street. She described her assailant as being a tall, African-American male, medium to dark-skinned, with scruffy facial hair, wearing dark clothes and a dark purple hat.
>
>[P4] A woman witnessed the attack from across the street. She started to run after the assailant but then came to Ms. Blanchard's aid and called 911. She relayed the details of the robbery, as well as the description of the perpetrator, to the police dispatcher. She testified that she saw the man only from the side and back and was unable to give the police a description of the man's face. She described him as wearing a hooded sweatshirt and dark pants.
>
>[P5] Cleveland police responded within minutes. Ms. Blanchard gave them a description of the man who robbed her as well as of her purse and its contents. About ten minutes after the report of the robbery, the police brought two different suspects to the Winking Lizard to see if the victim could identify her attacker in a cold stand identification. Ms. Blanchard immediately identified appellant as the man who had robbed her. She said he was wearing the same clothes as her attacker, including the purple hat. She testified that the other suspect was clean shaven, was wearing nicer clothes than her attacker, and looked nothing like him.
>
>[P6] Cleveland police sergeant Mark Medwid testified that he responded to a call that officers had stopped two men at the BP gas station located at East 9th Street and Carnegie Avenue, one of whom was wearing a purple knit hat and a dark hoodie and matched the description of the robber. Sergeant Medwid identified appellant in court as the individual picked up from the gas station and later identified as the robber by Ms. Blanchard. Medwid said he also spoke with Louis Bello, the man stopped at the gas station with appellant. Bello told him he had just picked appellant up and brought him to the BP gas station. But, after Bello saw appellant in the back of the police car, he changed his story and told Medwid that appellant had been with him all day. While Medwid was at the BP gas station, a second suspect, Aaron Jewell, was picked up from a bus stop on Prospect Avenue and brought over to the Winking Lizard.
>
>[P7] Officer Christopher Ereg testified that he was with Ms. Blanchard during both

cold stands. He said he stood with her inside the vestibule of the Winking Lizard as each suspect was separately brought out of the police car for her to see. He said Ms. Blanchard indicated that Jewell was not the man who robbed her. When appellant was brought out, Ms. Blanchard identified him as the robber and specifically noted that he was wearing the hat he had on when he robbed her.

[P8] The defense called Bello and Jewell as defense witnesses.

[P9] The jury found appellant guilty of both counts of robbery. The court sentenced appellant to prison terms of five years on the first count and three years on the second, to be served concurrently.

(Doc. 7-1, Tr. 56).

## PROCEDURAL BACKGROUND

### State Trial Court

On November 7, 2008, a Cuyahoga County grand jury issued an indictment charging Petitioner with two counts of Robbery in Case No. CR 517474 (O.R.C. § 2911.02(A)(2) and (3)). (Doc. 7-1, Tr. 3). Petitioner, represented by counsel, entered a plea of not guilty, and the case went to trial on March 30, 2009. (Doc. 7-1, Tr. 26). A jury found Petitioner guilty on both counts of Robbery. (Doc. 7-1, Tr. 4). On May 4, 2009, Petitioner was sentenced to five years imprisonment for the first count of Robbery (O.R.C. § 2911.02(A)(2)) and three years for the second count of Robbery (O.R.C. § 2911.02(A)(3)), to be served concurrently for an aggregate sentence of five years incarceration. (Doc. 7-1, Tr. 4).

### Direct Appeal

On June 2, 2009, Petitioner, represented by different counsel, filed a timely appeal to the Eighth District Court of Appeals, Cuyahoga County, Case No. 93391. (Doc. 7-1, Tr. 5). Petitioner raised two assignments of error:

> 1. APPELLANT'S CONVICTIONS FOR ROBBERY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> 2. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

(Doc. 7-1, Tr. 24). The state filed a brief in response. (Doc. 7-1, Tr. 45). On July 8, 2010, the Court of Appeals issued a decision affirming in part and reversing in part the judgment of the trial court, remanding the case back for resentencing pursuant to O.R.C. § 2941.25, which required the trial court to merge the sentences. (Doc. 7-1, Tr. 59).

**Ohio Supreme Court**

On August 30, 2010, Petitioner, acting *pro se*, filed a timely appeal to the Ohio Supreme Court in Case No. 10-1517. (Doc. 7-1, Tr. 61). In his memorandum in support of jurisdiction, Petitioner set forth two propositions of law:

> I. Appellant's convictions for robbery are against the manifest weight of the evidence.
>
> II. Appellant was denied his Sixth Amendment right to effective assistance of counsel.

(Doc. 7-1, Tr. 65).

On December 1, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the case as not involving any substantial constitutional question. (Doc. 7-1, Tr. 89).

**Resentencing**

Following the decision of the Eight District Court of Appeals, Petitioner was resentenced on August 27, 2010. (Doc. 7-1, Tr. 60). The two Robbery convictions were merged and Petitioner was ordered to serve five years imprisonment. (Doc. 7-1, Tr. 60).

### FEDERAL HABEAS CORPUS

On February 27, 2012, Petitioner filed the instant Petition asserting one ground for relief:

>**Ground One**: Petitioner was denied his Sixth Amendment right to effective assistance .
>
>**Supporting Facts**: In this case, Petitioner's trial counsel was deficient for failing to have Petitioner dressed in street clothes for trial, which unduly swayed the jury, and prejudiced Petitioner to receiving a fair trial under the Fourteenth Amendment.

(Doc. 1).

## DISCUSSION

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

Petitioner's sole ground for relief is a claim for ineffective assistance of trial counsel for failing to have Petitioner dressed in street clothes for trial. (Doc. 1). Petitioner argues this unduly

swayed the jury, thereby prejudicing him from receiving a fair trial. (Doc. 1). This claim will be addressed on the merits.

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698. *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692).

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Habeas review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 131 S. Ct. at 785. Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.

Here, as in his direct appeal, Petitioner argues that counsel was ineffective for allowing him to wear jail attire at trial. (Doc. 1). The state appellate court began its analysis of Petitioner's claim by citing *Strickland*, as well as *Estelle v. Williams*, 425 U.S. 501 (1976), the seminal case on whether wearing prison attire at trial could rise to a constitutional violation. The state appellate court eventually determined that based on the record before it, there was no evidence Petitioner's counsel was constitutionally ineffective merely because he wore prison attire at trial.

> [*P22] In the second assignment of error, appellant claims he was denied effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the trial would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 Ohio B. 190, 495 N.E.2d 407.
>
> [*P23] The burden is on appellant to prove ineffectiveness of counsel. *State v. Smith* (1985), 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128. Trial counsel is strongly presumed to have rendered adequate assistance. *Id.* Trial strategy or tactical

decisions cannot form the basis for a claim of ineffective counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189.

[*P24] Appellant argues that his trial counsel was deficient for allowing him to go to trial in jail attire, rather than in street clothes. Appellant bases his argument primarily upon *Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. In that case, the United States Supreme Court recognized that a juror's judgment might be affected by a defendant's appearance in prison clothing. However, the court refused to establish a bright-line rule that a conviction must be overturned when an accused wore jail clothing at trial. Instead, the court stated that the inquiry must focus on whether the accused's appearance before the jury in jail clothes was compelled. *Id*. at 507; *see, also, State v. Dorsey* (Apr. 23, 1998), Cuyahoga No. 72177, 1998 Ohio App. LEXIS 1727. "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id*. at 508.

[*P25] The *Estelle* court further stated that, "[u]nder our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Id*. at 512.

[*P26] Appellant does not argue that he was compelled to wear jail clothing at trial and our review of the record finds nothing to indicate that he was compelled to wear jail clothing during the trial. As such, the wearing of jail attire could be considered a trial strategy. Appellant maintained throughout the case that he was the victim of mistaken identity. Appellant's counsel may have been attempting to invoke a sense of sympathy from the jury for appellant's plight. This court will not second-guess what could be considered a matter of trial strategy. *State v. Stone*, 8th Dist. Nos. 91679 and 91680, 2009 Ohio 2262. Accordingly, the second assignment of error is overruled.

(Doc. 7-1, Tr. 56-59).

It was Petitioner's burden in the state court, as it is here, to establish deficient performance by his trial attorney. However, as the state appellate court pointed out, Petitioner has failed to do so. Wearing prison garb to trial is not prima facie evidence that counsel was ineffective for permitting it to happen; rather, Petitioner must show he was compelled, which he has not. Even so, as the state

8

appellate court pointed out, it may have been part of trial counsel's defense strategy to invoke pity from the jury. Accordingly, the court of appeals' application of the *Strickland* test was reasonable and Petitioner's assertion is without merit. Because the state court's determination that Petitioner failed to demonstrate a *Strickland* violation was reasonable, Petitioner's claim should be dismissed with prejudice.

## CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court dismiss Petitioner's claim with prejudice.

                                                             s/James R. Knepp II
                                               United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).